2018 IL App (4th) 170605

NO. 4-17-0605

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 21, 2018
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| RYAN M. RODDIS, | ) | No. 12CF897 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1     In June 2012, the State charged defendant, Ryan M. Roddis, with aggravated domestic battery (720 ILCS 5/12-3.3(a), 12-3.2(a)(1) (West 2010)). Following a bench trial, the trial court found defendant guilty and sentenced him to six years in prison. Defendant filed *pro se* a motion to reduce sentence that also alleged that his trial counsel was ineffective. The trial court dismissed the motion as untimely.

¶ 2     On direct appeal, this court upheld defendant's conviction and sentence but remanded for a hearing in compliance with *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). *People v. Roddis*, 2016 IL App (4th) 140631-U, ¶ 3.

¶ 3     On remand, the trial court initially appointed new counsel to represent defendant on his ineffective assistance of counsel claims. However, at a subsequent hearing, the trial court

allowed that counsel to withdraw because of a potential conflict.

¶ 4    In January 2017, the trial court conducted a hearing purportedly pursuant to this court's remand but deemed it a hearing on defendant's ineffective assistance claims. After reviewing defendant's written claims and questioning him and his trial counsel, the court found that the allegations did not amount to ineffective assistance of counsel. The court then appointed new counsel to represent defendant on his motion to reduce sentence. In August 2017, the court denied that motion.

¶ 5    Defendant appeals, arguing that the trial court erred by (1) addressing the merits of his ineffective assistance of counsel claims instead of determining whether new counsel should have been appointed and (2) not appointing new counsel because defendant showed "possible neglect of the case." We agree with defendant's first argument, vacate the trial court's order, and remand with directions.

¶ 6    I. BACKGROUND

¶ 7    A. The Bench Trial and Conviction

¶ 8    In June 2012, the State charged defendant with aggravated domestic battery (720 ILCS 5/12-3.3 (West 2010)), alleging that he pushed his girlfriend, Meghan Collins, causing her head to hit a door, resulting in a laceration. Defendant was initially represented by Philip Tibbs. However, defendant later retained new counsel, Baku Patel, and fired Tibbs.

¶ 9    At defendant's December 2013 bench trial, Collins testified that, in June 2012, defendant was living at her apartment with their daughter. Defendant and Collins were arguing; she asked him to leave, and he refused. Defendant then picked up a pillow from the back of the couch, moved toward Collins, and began to throw the pillow out the door. Collins pushed the pillow down to prevent defendant from throwing it. Defendant then pushed Collins's head,

which hit the corner of the open door, causing a laceration. Collins ran upstairs to the bathroom and called the police. Collins was later treated at the hospital and received staples to close the laceration on her head.

¶ 10     On cross-examination, Collins testified that although she told the police that defendant punched her multiple times, that is not what happened. She also admitted she was currently being charged with filing a false police report. Collins testified that she did not believe defendant meant to push her head into the door. Collins admitted she had communicated with defendant by text message and told him she thought he did not mean to push her head against the door.

¶ 11     Decatur police officer Scott Bibby responded to Collins's apartment. He stated that Collins had a laceration on her head. Defendant told Bibby the two were arguing and he threw a couch cushion at Collins to get her to stop yelling. Defendant said he did not mean to hit Collins but the cushion struck her in her head, and her head then collided with the door. Collins told Bibby that defendant had punched her in the head multiple times.

¶ 12     An emergency room physician testified that (1) she treated Collins for a laceration to her head, (2) the laceration required three staples to close, and (3) Collins reported the laceration was caused by someone grabbing her head and hitting it against a door.

¶ 13     Defendant testified that he was living with Collins and their daughter in June 2012. He and Collins were arguing when she told him to leave and began throwing his belongings out of the front door. Defendant told Collins if she was going to throw his things out, he was going to throw his couch outside. He picked up a large seat cushion and threw it toward the open door when it struck Collins in her head, causing her head to hit the door.

¶ 14     Patel asked defendant if Collins had stayed in contact with him. Defendant

responded that Collins had threatened to testify against him if he did not give her money. Patel then asked if Collins admitted to him that she thought it was an accident, and defendant said she did.

¶ 15 During closing arguments, Patel argued the State failed to prove defendant knowingly caused great bodily harm because Collins admitted her injury was the result of an accident, which was also consistent with defendant's version of events. The State argued that (1) defendant knowingly committed battery and (2) the State did not need to prove the defendant intended to cause great bodily harm.

¶ 16 The trial court found defendant guilty of aggravated domestic battery, explaining that it did not find defendant's story credible. In February 2014, the court sentenced defendant to six years in prison. (We note that defendant had eight prior felony convictions.)

¶ 17 B. The Postsentence Proceedings

¶ 18 In June 2014, defendant *pro se* filed a motion for reduction of sentence that also raised claims of ineffective assistance of counsel. At a hearing at which defendant was not present, the trial court dismissed defendant's motion as untimely.

¶ 19 Defendant appealed, arguing that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt and (2) the trial court erred when it dismissed his *pro se* posttrial claims of ineffective assistance of counsel without conducting a *Krankel* hearing. In July 2016, this court affirmed defendant's conviction and sentence but remanded for a hearing in compliance with *Krankel* on defendant's posttrial claims of ineffective assistance of counsel. *Roddis*, 2016 IL App (4th) 140631-U, ¶ 3.

¶ 20 C. The Proceedings on Remand

¶ 21                                    1. *The Initial Hearing*

¶ 22            In September 2016, on remand, the trial court conducted a hearing at which defendant was present. The court stated the case had been remanded for the court to consider defendant's claims of ineffective assistance of counsel. The court then asked defendant if he was going to represent himself "on this matter or do you want me [to] consider[ ] appoint[ing] counsel?" Defendant responded that he wanted the court to consider appointing counsel but was told by his appellate attorney that it was in the court's discretion based on the merits of his claims. The court then stated, "I'm not sure counsel is necessary, but I think counsel is always better, at least to perhaps to get me organized." The court asked the State if it disagreed, and the State said it thought "it[ ] [was] a good idea." The trial court appointed public defender Rodney Forbes to represent defendant and continued the matter for a status hearing.

¶ 23                              2. *The Subsequent Status Hearings*

¶ 24            Later in September 2016, Forbes appeared on defendant's behalf and stated that the case had been remanded for a *Krankel* hearing. The trial court then stated that the case needed to be set for a "pre-inquiry *Krankel* hearing." Forbes agreed and requested additional time to review the file, speak with his client, and file any amended pleading if necessary. The court granted his request and continued the matter.

¶ 25            In November 2016, Forbes appeared for defendant, who was also present personally. The trial court recounted the procedural history of the case and then the following exchange took place:

                "THE COURT: [The appellate court] sent the matter back for a

        hearing in compliance with *Krankel.*

- 5 -

And I think, Mr. Forbes, I want to certainly allow you a chance to speak, but I can probably proceed at this point with a pre-inquiry *Krankel* hearing before I proceed to a full-blown *Krankel* hearing. Would you agree with that procedural assessment, Mr. Forbes?

MR. FORBES: Well, Your Honor, in this case I was appointed to represent this defendant. Normally, I wouldn't be appointed at a pre-*Krankel* inquiry.

THE COURT: Correct.

MR. FORBES: Normally, a pre-*Krankel* inquiry the attorney would be—

THE COURT: Proceed with the prior lawyer.

MR. FORBES: Right. And so that way the court can inquire as to matters of strategy and such. So I know this is set for pre-*Krankel* inquiry on today's date. I was prepared to represent the defendant. I have received several affidavits and correspondence from the defendant. I understand the gist of his claims. He is claiming ineffective assistance of counsel from his prior counsel, Mr. Patel.

THE COURT: So you think we would be safer, in a nutshell, Mr. Forbes, to probably just proceed with an ordinary *Krankel* hearing, I think is what I am hearing from you?

MR. FORBES: Well, yes, I do. And then also I need to inform the court that as public defender, I briefly represented the alleged victim in this case, Megan Collins. I represented her at [a] preliminary [hearing].

Her case was assigned to an assistant public defender. That was during while this case was pending."

¶ 26　　　　　Forbes indicated that there may be a conflict. (As best we can tell, Forbes's representation of Collins was unconnected with the charges against defendant.) The trial court commented that Patel was not present and, in order to properly conduct the hearing, he would need to appear. Forbes then moved to withdraw until the court would conduct a hearing to determine if new counsel was required.

¶ 27　　　　　The trial court asked defendant if he had a position regarding Forbes's withdrawing. Defendant stated that he "would like to ask him to represent me because he understands my case." Nonetheless, the court granted Forbes's motion to withdraw over defendant's objection and noted that it believed it could proceed with a "pre-inquiry *Krankel*" hearing without Forbes's representing defendant. The court then discussed with the parties how Patel's presence at the next hearing would be secured.

¶ 28　　　　　Finally, the trial court explained to defendant what would take place at the next hearing. The court stated it had "to get through one step before Mr. Forbes' involvement in this case becomes necessary." The court added that at the next hearing, defendant would be allowed to elaborate on the claims raised in his motion alleging ineffective assistance of counsel. Then Patel would be allowed to respond. The State would be present, but the State's "involvement on that date is to be almost nothing." The court further stated that if it found the allegations directed at Patel were "well-grounded," then either Forbes or someone else would be appointed to represent defendant.

¶ 29　　　　　　　　　　　　3. *The January 2017 Hearing*

¶ 30　　　　　In January 2017, the trial court conducted what it called a "pre-inquiry *Krankel*"

hearing. At the hearing, defendant was present *pro se*, as were his earlier trial attorneys, Patel and Tibbs. Also present was the prosecutor. Forbes was not present.

¶ 31 The trial court began by outlining the procedure it would follow. The court said that it would first summarize each allegation. Then defendant would be allowed to elaborate and trial counsel would be permitted to respond. The court then stated that after hearing from counsel, it would "rule as to whether or not I find that there was ineffective assistance in this situation." The court later added that "once we determine where we are at the end of the day, if the allegations are denied, I'll probably go ahead and appoint you counsel *** and then we'll deal with the rest of your motion for reduction of sentence. If I find that the allegations are founded, I'll have to appoint separate counsel, and we will proceed to a full-blown *Krankel* hearing." The hearing then proceeded as described.

¶ 32 Defendant primarily contended that his trial counsel was ineffective for failing to impeach Collins with various text messages. Defendant explained that he gave his attorney copies of texts and emails from Collins in which she said she would speak to defendant's lawyer for $1000, that she had been "playing" him the whole time to get money, and that the incident was an accident. However, Patel did not impeach Collins with these messages on cross-examination.

¶ 33 Patel responded that, from what he remembered, he got Collins to admit she thought her injuries were the result of an accident. Patel explained that once Collins admitted it was an accident, he had all the impeachment he needed to show defendant did not knowingly cause great bodily harm.

¶ 34 Defendant also alleged his counsel (1) "tricked" him into waiving his right to a jury trial, (2) indicated that counsel personally knew the judge, and (3) assured defendant that the

State would dismiss the charges or offer a lower plea once it saw the victim's text messages. Patel and Tibbs denied making any such representations.

¶ 35 Defendant then presented a letter Patel had written to the Attorney Registration and Disciplinary Commission (ARDC) in response to a complaint defendant had made about Patel's failure to use Collins's text messages in his defense. In the letter, Patel stated he "conduct[ed] a thorough cross[-]examination of the victim, including questioning her regarding emails and text messages." At the hearing, Patel stated he stood by what he wrote in his letter.

¶ 36 The trial court then stated that it had considered the pleadings, the ARDC letter, and the statements of defendant and his previous lawyers and found "the defendant's allegations do not amount to ineffective assistance of counsel." Accordingly, the court would "not proceed to a full *Krankel* hearing." The court stated it thought defendant was "well represented" and that the case was "one of credibility." The court noted that despite the evidence that impeached Collins's testimony, the court found Collins credible while defendant was not. The court concluded, "I'm satisfied that you were properly represented" and found again "that there was no ineffective assistance."

¶ 37 Nonetheless, the court appointed the public defender to represent defendant on the remainder of his posttrial motion, which was a motion to reduce sentence.

¶ 38                    4. *The Remaining Proceedings*

¶ 39 In July 2017, defendant's new counsel filed an amended motion for reduction of sentence, arguing the trial court erred by failing to consider the financial impact when it sentenced defendant. In August 2017, the trial court denied defendant's amended motion.

¶ 40 This appeal followed.

¶ 41                                    II. ANALYSIS

¶ 42         Defendant appeals, arguing that the trial court erred by (1) addressing the merits of his ineffective assistance claims instead of determining whether counsel should have been appointed and (2) not appointing new counsel because defendant showed "possible neglect of the case." We agree with defendant's first argument, vacate the trial court's order, and remand with directions.

¶ 43         The record in the present case reveals that the trial court misunderstood both the purpose of a *Krankel* hearing and how one should be conducted. Because we have seen too many cases in which trial courts suffer from the same confusion, we believe a thorough discussion of *Krankel* hearings might be helpful.

¶ 44                              A. *Krankel* Hearings

¶ 45         In *Krankel*, the defendant filed *pro se* a posttrial motion, alleging his trial counsel was ineffective for failing to contact an alibi witness or present an alibi defense at trial. *Krankel*, 102 Ill. 2d at 187. The defendant personally argued his *pro se* motion, which the trial court denied. *Id.* at 188-89. On appeal, the State conceded that the defendant should have had new counsel represent him on the motion. *Id.* at 189. The supreme court agreed and remanded the case for a new hearing on the motion with different counsel to determine whether the defendant was denied the effective assistance of counsel. *Id.*

¶ 46                              1. *The* Krankel *Inquiry*

¶ 47         The common law procedure first recognized in *Krankel* "serves the narrow purpose of allowing the trial court to decide *whether to appoint independent counsel* to argue a defendant's *pro se* posttrial ineffective assistance claims." (Emphasis added.) *People v. Patrick*, 2011 IL 111666, ¶ 39, 960 N.E.2d 1114. Thus, "a *Krankel* hearing is a term of art to describe the

hearing the court must conduct when a defendant *pro se* has raised a posttrial claim regarding his counsel's ineffective assistance." *People v. McGath*, 2017 IL App (4th) 150608, ¶ 51, 83 N.E.3d 671. The *only* issue to be decided at a *Krankel* hearing is whether new counsel should be appointed. *Id.*; *Patrick*, 2011 IL 111666, ¶ 39. Accordingly, there are only two possible outcomes when a trial court conducts a *Krankel* hearing: (1) the court appoints new counsel who should then conduct an independent investigation into the defendant's ineffective assistance claims and take whatever action counsel thinks would be appropriate or (2) the court does not appoint new counsel and posttrial matters proceed as in any other case. Accordingly, at a *Krankel* hearing, the trial court does not—and cannot—reach the merits of an ineffective assistance claim; the court simply determines whether it is appropriate to appoint new counsel for the defendant to investigate such claims.

¶ 48            The "preliminary inquiry" to which *Krankel* cases sometimes refer is the preliminary inquiry into the factual basis, if any, of a defendant's claims of ineffective assistance of counsel to determine whether appointing new counsel to pursue those claims is necessary. The Illinois Supreme Court recently affirmed this principle in *People v. Ayres*, 2017 IL 120071, ¶ 24, 88 N.E.3d 732, holding as follows:

> "The purpose of the preliminary inquiry is to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim. In this way, the circuit court will have the necessary information *to determine whether new counsel should be appointed to argue the claim of ineffective assistance of counsel*." (Emphasis added.)

See also *Patrick*, 2011 IL 111666, ¶ 43 ("The trial court was required to conduct a preliminary

- 11 -

inquiry into the factual basis of defendant's [ineffective assistance] allegations."). If the appointment of new counsel is warranted, determining whether the defendant actually received ineffective assistance of counsel is for another day; the court does not reach the merits of such claims at the *Krankel* hearing.

¶ 49　　Though occasionally mentioned in some cases, there is no true second stage or subsequent *Krankel* inquiry because the *sole* issue to be resolved at a *Krankel* hearing is whether new counsel should be appointed. *Id*. ¶ 39. Once the trial court determines whether to appoint new counsel, the *Krankel* inquiry is over; if the court appoints new counsel, the case proceeds regarding the defendant's claims of ineffective assistance as determined by new counsel. *Id.*

¶ 50　　The supreme court explained its rationale for limiting the *Krankel* hearing to this narrow purpose in *People v. Jolly*, 2014 IL 117142, ¶ 38, 25 N.E.3d 1127. In that case, the court addressed the proper scope of the State's participation in a *Krankel* hearing and concluded that it is reversible error to permit the State to respond to the defendant's *pro se* claims or otherwise adversarially participate in a *Krankel* hearing. *Id.* In reaching that conclusion, the court described the *Krankel* hearing as "neutral and nonadversarial" and an opportunity for the trial court to "initially evaluate" a defendant's *pro se* claims. *Id.* ¶¶ 38-39. This initial and nonadversarial evaluation is not the forum at which the merits of a claim of ineffective assistance of counsel are resolved. See *id.*

¶ 51　　Courts have used the terms "*Krankel* hearing," "*Krankel* inquiry," "preliminary *Krankel* inquiry," and words to that effect interchangeably; this lack of consistency may be responsible for some of the confusion that exists, as seen in the proceedings in this case. The narrow and proper function of a *Krankel* hearing becomes clear when contrasted with a situation in which a defendant, who hires new counsel, files a posttrial motion alleging ineffective

assistance of his original trial counsel. In such instances, no *Krankel* hearing is necessary because the defendant is already represented by counsel to investigate and appropriately pursue the defendant's claims of ineffective assistance of trial counsel. In those cases, courts routinely conduct hearings—at which both the defense and State fully participate—on the merits of those motions. And no *Krankel* hearing is necessary because the sole question at a *Krankel* hearing is whether the court should appoint the defendant new counsel to investigate and pursue the defendant's ineffective assistance claims. When the defendant already has hired new counsel to do that, the issue of the court's appointing counsel simply does not exist.

¶ 52        Perhaps terms like "preliminary *Krankel* hearing" arose because the question of the appointment of counsel to pursue *pro se* claims of ineffective assistance is necessarily preliminary to the consideration of such claims on their merits. Whatever the reason, the function of the *Krankel* hearing remains simply to decide whether to appoint counsel—its "narrow purpose" (*Patrick*, 2011 IL 111666, ¶ 39)—and not to reach the merits of the ineffective assistance claims. Whether the defendant is then represented by appointed or retained counsel, the merits of an ineffective assistance claim are addressed at a subsequent hearing in which both parties can participate. *Ayres*, 2017 IL 120071, ¶ 24.

¶ 53                            2. *When a* Krankel *Hearing Is Required*

¶ 54        A *Krankel* hearing is required "when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *Id.* ¶ 11. The supreme court recently clarified what little a defendant must do:

> " '[A] *pro se* defendant is not required to do any more than bring his or her claim
> to the trial court's attention' (*People v. Moore*, 207 Ill. 2d 68, 79[, 797 N.E.2d
> 631] (2003); [citation]), and thus, a defendant is not required to file a written

motion (*Patrick*, 2011 IL 111666, ¶ 29[, 960 N.E.2d 1114]) but may raise the issue orally (*People v. Banks*, 237 Ill. 2d 154, 213-14[, 934 N.E.2d 435] (2010)) or through a letter or note to the court (*People v. Munson*, 171 Ill. 2d 158, 200[, 662 N.E.2d 1265] (1996))." *Id.*

¶ 55      Further, although a defendant's bare assertion of " 'ineffective assistance of counsel' " is sufficient to trigger a *Krankel* hearing (*id.* ¶ 23), the defendant must nevertheless clearly state that he is asserting a claim of ineffective assistance of counsel. *Id.* ¶ 18. Accordingly, "[i]n instances where the defendant's claim is implicit and could be subject to different interpretations, a *Krankel* inquiry is not required." *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 26, 93 N.E.3d 664 (finding a hearing was not required where defendant failed to mention attorney in his letter to trial court complaining about sentence); *People v. King*, 2017 IL App (1st) 142297, ¶ 20, 80 N.E.3d 599 (*Krankel* not implicated when defendant, without mentioning her attorney, claimed error because a witness was not called).

¶ 56      A *Krankel* issue may be raised any time after a conviction but before the trial court's judgment is final. The issue is most commonly raised between conviction and sentencing, but need not be. For instance, a defendant, as in the present case, may raise that claim on a motion to reconsider sentence.

¶ 57                              3. Krankel *Hearing Proceedings*

¶ 58      A defendant is not automatically entitled to appointed counsel when he files *pro se* a motion asserting ineffective assistance of counsel. *Ayres*, 2017 IL 120071, ¶ 11. "Rather, '[t]he law requires the trial court to conduct some type of inquiry [*i.e.*, a *Krankel* inquiry] into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel.' " *Id.* (quoting *People v. Moore*, 207 Ill. 2d 68, 79, 797 N.E.2d 631, 638 (2003)).

¶ 59    Initially, it often is a sound practice for the trial court to discuss the allegations with the defendant in open court. Because the function of the *Krankel* hearing is to give the defendant an opportunity to flesh out his claim of ineffective assistance (*Ayres*, 2017 IL 120071, ¶ 20), asking the defendant about his claims provides clarity for the record and thereby limits the issues on appeal. *Id.* ¶ 13. In addition, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." (Internal quotation marks omitted.) *Id.* ¶ 12. For that reason, the trial court is allowed to ask the defendant's trial counsel to comment on the defendant's allegations. *Id.* The trial court may also rely upon "its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *Id.*

¶ 60    What the trial court may *not* do, however, is seek input from the State on the merits of the defendant's *pro se* claims of ineffective assistance of counsel. *Jolly*, 2014 IL 117142, ¶ 38. Doing so converts this initial and nonadversarial proceeding into a contested hearing on the merits—a hearing at which the defendant would necessarily be forced to prove the merits of his claims *pro se* against the arguments of the State's Attorney. Such a hearing "cannot reveal, in an objective and neutral fashion, whether the circuit court properly decided that a defendant is not entitled to new counsel." *Id.* ¶ 39.

¶ 61                    4. *When New Counsel Should Be Appointed*

¶ 62    As shown by the record in this case, trial courts and counsel are sometimes confused regarding the purpose of a *Krankel* hearing, thinking the issue to be resolved is whether the defendant in fact ultimately received ineffective assistance of counsel. As explained earlier, this view is not correct. Instead, the *sole* issue to be resolved by a *Krankel* hearing is whether the

court should appoint new counsel for a defendant so that the new counsel can take whatever action regarding defendant's claim of ineffective assistance that counsel thinks would be appropriate.

¶ 63        "If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." (Internal quotations marks omitted.) *Ayres*, 2017 IL 120071, ¶ 11.

¶ 64        It bears mentioning that the purpose of appointing counsel pursuant to *Krankel* is for new counsel to investigate the defendant's *pro se* claims of ineffective assistance of trial counsel—not to pursue other claims of error, like those commonly raised in posttrial motions.

¶ 65        Although courts have not clearly defined when a *pro se* ineffective assistance claim "lacks merit," the supreme court, in *People v. Johnson*, 159 Ill. 2d 97, 126, 636 N.E.2d 485, 498 (1994), did conclude that the defendant in that case "did not bring to the trial court's attention a colorable claim of ineffective assistance of counsel." In reaching that conclusion, the supreme court found that the defendant's various allegations were conclusory, misleading, and legally immaterial. *Id.* A review of the case law since *Johnson* was decided reveals that there are generally four primary ways a trial court, when conducting a *Krankel* inquiry, may conclude that an ineffective assistance claim "lacks merit" so that the court need not appoint new counsel to pursue the defendant's ineffective assistance claim. Those four primary ways are when the court determines that the defendant's ineffective assistance claim is (1) conclusory, (2) misleading, (3) legally immaterial, or (4) pertaining solely to an issue of trial strategy. See, *e.g.*, *Johnson*, 159 Ill. 2d at 126; *Moore*, 207 Ill. 2d at 78. We address each in turn.

¶ 66                                    a. Conclusory

¶ 67        Following the supreme court's recent decision in *Ayres*, it is unclear when a defendant's *pro se* posttrial claim of ineffective assistance of counsel may be so conclusory that a *Krankel* hearing is not required. Nonetheless, we believe the following rule applies: An allegation is conclusory when a defendant is unable to add any additional factual basis to support his bare allegation from which a court could infer a basis in support of an ineffective assistance claim. *People v. Munson*, 171 Ill. 2d 158, 201, 662 N.E.2d 1265, 1284 (1996).

¶ 68        For instance, in *People v. Towns*, 174 Ill. 2d 453, 467, 675 N.E.2d 614, 620-21 (1996), the defendant's allegations were properly deemed conclusory because he claimed his counsel should have investigated "relevant facts and witnesses," but defendant offered no explanation as to what or to whom he was referring. Similarly, in *Munson*, the defendant stated he was claiming ineffective assistance of counsel, but, despite the trial court's making "every effort to ascertain the nature and substance of defendant's ineffectiveness claim," the defendant "provided neither a basis nor facts from which the court could infer a basis in support of such claim." *Munson*, 171 Ill. 2d at 201.

¶ 69                                    b. Misleading

¶ 70        A claim is misleading—and therefore lacks merit—when the record clearly rebuts or contradicts the substance of the allegations, demonstrating that the claim for ineffective assistance is unsupported. In *Johnson*, the defendant claimed his attorneys failed to investigate police misconduct, including that he was beaten and that a witness lied under oath. *Johnson*, 159 Ill. 2d at 126. However, the record revealed that trial counsel presented significant evidence of the alleged police misconduct and, contrary to the defendant's claims, the witness admitted to the very fact defendant claimed he lied about. *Id.* at 126-28.

¶ 71 A claim may also be misleading when the inquiry at the *Krankel* hearing reveals that the defendant's assertions are false and do not support a claim of ineffectiveness. For example, a defendant may claim to have an exculpatory witness whom his counsel failed to present. However, after an inquiry at the *Krankel* hearing, the court may learn (from defense counsel or defendant) that the witness's testimony was (1) not helpful to the defendant or (2) contrary to his claims. See *People v. Nitz*, 143 Ill. 2d 82, 135, 572 N.E.2d 895, 919 (1991) (court determined that witnesses' testimony was not in accord with defendant's representations and was actually inapposite to his claims).

¶ 72                                    c. Legally Immaterial

¶ 73 If a claim that is taken as true, either on its face or after inquiry, would still not support a finding of ineffective assistance, then it is legally immaterial. In *People v. Giles*, 261 Ill. App. 3d 833, 846, 635 N.E.2d 969, 979 (1994), the defendant was convicted of aggravated criminal sexual assault and argued that his trial counsel was ineffective for not arguing the victim's hymen was not torn, despite the medical evidence supporting such a finding. The court noted that only slight contact with the victim's vagina was required to support the conviction, and thus, the medical evidence had no bearing on counsel's performance. *Id.* at 848.

¶ 74                                    d. Matter of Trial Strategy

¶ 75 A claim may be meritless if it pertains solely to a matter of trial strategy. *Moore*, 207 Ill. 2d at 78. A claim that relates to a matter that does not fall within the definition of ineffective assistance of counsel as provided in *Strickland v. Washington*, 466 U.S. 688 (1984), is meritless. *People v. Banks*, 237 Ill. 2d 154, 215-16, 934 N.E.2d 435, 469 (2010). In *Banks*, for example, the supreme court rejected a claim that counsel should have been appointed on defendant's *pro se* ineffectiveness claims because the claim pertained to trial counsel's conduct

during *voir dire* that is generally not subject to *Strickland* review. *Id.*

¶ 76 However, certain claims that may *generally* be matters of trial strategy could still potentially support an ineffective assistance claim. In *People v. Peacock*, 359 Ill. App. 3d 326, 339-40, 833 N.E.2d 396, 407 (2005), the appellate court remanded for a *Krankel* hearing based on the defendant's claims that his counsel failed to call a witness and failed to ask certain questions on cross-examination of another witness. The court in *Peacock* acknowledged these matters generally pertain to trial strategy but noted that if counsel's actions were "objectively unreasonable, it can amount to ineffective assistance if the defendant suffered prejudice." *Id.* at 340.

¶ 77 Therefore, when dealing with matters of trial strategy, the trial court at the *Krankel* hearing must determine if the allegations and factual bases therefor could support a claim that trial counsel was objectively unreasonable. If the allegations and factual bases could support that claim, new counsel should be appointed.

¶ 78                          5. *The Standard of Review*

¶ 79 " 'The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel.' " *Ayres*, 2017 IL 120071, ¶ 13 (quoting *Moore*, 207 Ill. 2d at 78). "The issue of whether the circuit court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." *Jolly*, 2014 IL 117142, ¶ 28.

¶ 80 Some courts, including this one, have remarked that "if the trial court properly conducted the entire *Krankel* inquiry and reached a determination on the merits [of the defendant's ineffective assistance claims], we will reverse only if the trial court's action was manifestly erroneous." *People v. Robinson*, 2017 IL App (1st) 161595, ¶ 90, 93 N.E.3d 573; see

*People v. Sims*, 2014 IL App (4th) 130568, ¶ 142, 9 N.E.3d 621 (substantially the same). We now believe these cases were not correctly decided.

¶ 81        We hold that a trial court commits reversible error when it conducts a *Krankel* hearing and concludes—on the merits—that there was no ineffective assistance, and we note that we are not the first court to so conclude. See *People v. Fields*, 2013 IL App (2d) 120945, ¶ 41, 997 N.E.2d 791 (trial court violated the defendant's right to be represented by counsel by converting a *Krankel* hearing on the defendant's *pro se* claim of ineffective assistance into an adversarial proceeding); *People v. Cabrales*, 325 Ill. App. 3d 1, 5-6, 756 N.E.2d 461, 465 (2001) (trial court erred by proceeding to full hearing on the merits of the defendant's *pro se* claims instead of conducting a fact-gathering investigation).

¶ 82        We mentioned earlier that a thorough discussion of *Krankel* hearings might be helpful because we have seen too many cases in which trial courts have misunderstood the purpose of *Krankel* and how a *Krankel* hearing should be conducted (*supra* ¶ 43). Sometimes the same difficulty affects the appellate court.

¶ 83        In *People v. Jackson*, 2018 IL App (5th) 150274, ¶¶ 107-22, the Fifth District recently addressed a defendant's claim that the trial court failed to conduct a *Krankel* inquiry regarding the defendant's claims of ineffective assistance of his trial counsel. The Fifth District in *Jackson* did not review the trial court's handling of the *Krankel* inquiry (in which the *sole* question is whether the trial court received sufficient information from which to decide whether counsel should be appointed to investigate the defendant's *pro se* claim of ineffective assistance) but instead reviewed the record and concluded *on the merits* that the defendant did not receive ineffective assistance of counsel during his trial. *Id.* In doing so, the appellate court rejected the defendant's ineffective assistance claim, despite the fact that the defendant did not have the

assistance of counsel to investigate and argue that claim before the trial court. *Id.* Accordingly, we respectfully disagree with the analysis and conclusion the Fifth District reached in *Jackson*.

¶ 84                                B. The Facts of This Case

¶ 85            In this case, at the first hearing after remand, the trial court appointed counsel for defendant on his *pro se* motion to reduce sentence. Once the court appointed counsel, no reason existed for the court to conduct any further hearings pursuant to *Krankel*; instead, the case should have proceeded based upon whatever action defendant's new counsel might choose to take regarding defendant's ineffective assistance claims. Further inquiry pursuant to *Krankel* was not appropriate at that point because *the sole issue to be decided at a* Krankel *hearing is whether to appoint counsel*. As soon as the court decided to appoint counsel, not only was a *Krankel* hearing not called for, but the court's purportedly conducting one made no sense. Indeed, the case should have continued the same way it would have if defendant had hired private counsel to assert the same claims.

¶ 86            We also note that the trial court at one point reconsidered its appointment of new counsel, apparently believing (incorrectly) that the court was required to conduct a hearing at which defendant and his trial counsel could appear and address defendant's claims of ineffective assistance.

¶ 87            Although the vast majority of cases in which a defendant *pro se* raises a claim of ineffective assistance of trial counsel will (and likely should) proceed to a *Krankel* hearing with trial counsel present, doing so is not necessarily required in every case. After a trial court reviews a *pro se* motion or letter alleging ineffective assistance of counsel, the court may conclude that the allegations on their face have sufficient merit to justify the appointment of counsel. New counsel would then take whatever action counsel might deem appropriate regarding the

- 21 -

defendant's claim of ineffective assistance.

¶ 88        Here, the trial court erred when it conducted the January 2017 hearing by addressing the *merits* of defendant's ineffective assistance claim without appointing new counsel for defendant. The record clearly demonstrates the court, believing it was conducting a *Krankel* hearing, ruled on the merits of defendant's ineffective assistance claims. Indeed, the trial court indicated as much, stating that it would "rule as to whether or not I find that there was ineffective assistance in this situation," as well as the court's later findings at that hearing that "the defendant's allegations do not amount to ineffective assistance of counsel" and "I'm satisfied you were properly represented, *** and there was no ineffective assistance." The court reached the wrong result because it made the wrong inquiry.

¶ 89        Multiple parties suffered prejudice as a result of the trial court's error. First and foremost, defendant was prejudiced because he did not have counsel to help him argue that his allegations did in fact rise to the level of ineffective assistance. Defendant thought (indeed, was told by the court) that the court was evaluating his claims for potential merit and whether an evidentiary hearing should be conducted at a later date. Then the court in fact conducted that evidentiary hearing and forced defendant to argue the merits of his motion without his even being aware that they were being considered.

¶ 90        Additionally, the State is prejudiced when a trial court evaluates the merits of a defendant's claims of ineffective assistance without the State's being allowed to comment or argue. The supreme court has emphasized that the State is not allowed to have any more than *de minimis* input at a *Krankel* hearing. *Jolly*, 2014 IL 117142, ¶ 38. The reason for this unique prohibition is simple: no rights are being adjudicated. *Id.* No rights are being adjudicated because the *sole* matter addressed at a *Krankel* hearing is whether the court should appoint new counsel

for the defendant on his claim of ineffective assistance of trial counsel. *Id.* The State, just like a defendant, always suffers the risk of prejudice when a court adjudicates the merits of an issue without permitting the State to argue its position.

¶ 91                    C. How a *Krankel* Hearing Should Proceed on Remand

¶ 92          Given that the trial court in this case misunderstood how to proceed with a *Krankel* inquiry following the earlier remand from this court, and given further that remands to trial court to conduct *Krankel* hearings happen with some regularity, we clarify the proper steps to take. (We note that these steps are also the ones a trial court should take in the first instance.)

¶ 93          First, when a case is remanded for a *Krankel* hearing, the trial court should not automatically appoint new counsel for the defendant. In the usual case, the appellate court remands for a *Krankel* hearing because the record is inadequate. Therefore, on remand, the trial court should familiarize itself with the defendant's claims of ineffective assistance and review any written submissions, as well as any transcripts of the proceedings if the allegations were raised orally. Then, in the usual case, the court should require the attendance of the defendant's trial counsel at the *Krankel* hearing.

¶ 94          Once the State, defendant, and defendant's trial counsel are present, the court should review the allegations and ask the defendant if he has anything to add, thereby giving the defendant the opportunity to clarify or expand upon his previous claims. Then, the court should allow defendant's trial counsel to respond. In evaluating the defendant's claim, the court may ask any questions of defense counsel or defendant the court believes to be helpful. The court should not allow the State to respond or participate during the *Krankel* hearing.

¶ 95          After the court has engaged in what it believes to be an adequate inquiry into the defendant's claims, it should determine whether new counsel should be appointed to pursue the

defendant's claim of ineffective assistance as determined by new counsel.

¶ 96                                    D. Comparison to Postconviction Petitions

¶ 97          Although the standards are not identical, in order to illustrate the type of inquiry in which trial courts should engage, we believe the evaluation made at *Krankel* hearings is similar to one trial courts routinely make at the first stage of postconviction petitions. Trial courts are familiar with the well-established principles for evaluating postconviction petitions at the first stage, so courts may find it helpful to think of *Krankel* hearings in a similar fashion.

¶ 98          Postconviction petitions provide a good basis for comparison because, like *Krankel* inquiries, they are the most common of very few instances when the trial court exercises its judgment in a criminal case without input from the State. Additionally, both circumstances typically involve a defendant's *pro se* claims (indeed, typically ineffective assistance claims), and the trial court is asked to evaluate the viability of those claims.

¶ 99          The three stages of postconviction petitions are familiar and well settled. In the first stage, the trial court is required to review the petition and determine if it is "frivolous or patently without merit," that is, "the petition has no arguable basis either in law or in fact." *People v. Tate*, 2012 IL 112214, ¶ 9, 980 N.E.2d 1100. At this first stage, the court should conduct its evaluation of the postconviction petition without any input from the State. *People v. Turner*, 2012 IL App (2d) 100819, ¶ 18, 972 N.E.2d 1205. In order to survive the first stage, a defendant is required to state the "gist of a constitutional claim." (Internal quotation marks omitted.) *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). If the court finds a *pro se* defendant has met this low threshold, it appoints counsel to further evaluate the matter and amend the petition if necessary. *Tate*, 2012 IL 112214, ¶ 10. (We hasten to add that we are simply pointing to the postconviction context for its illustrative value and not suggesting that the

"gist" standard applies in a *Krankel* context.) The State is then allowed to participate, and the matter can proceed to an evidentiary hearing on the merits. *Id.* (Unlike postconviction proceedings, the State cannot move to dismiss a claim alleging ineffective assistance under *Krankel.*)

¶ 100 In this way, *Krankel* hearings are comparable to first-stage postconviction proceedings, except the trial court is permitted to (and in most cases probably should) conduct an inquiry into the facts behind a defendant's claims of ineffective assistance. In determining whether to appoint counsel, the court determines whether a defendant has stated a sufficient basis for the appointment of counsel. In both instances, trial courts are being asked to weed out "patently frivolous" or "spurious" claims. As a result, after a *Krankel* hearing, the trial court should decline to appoint new counsel when the defendant's claims lack support (that is, after asking a defendant to elaborate, the defendant fails to identify facts to support his claims or such facts are affirmatively contradicted by the record or legally immaterial) or are solely matters of trial strategy (for example, when to introduce a particular piece of evidence or testimony).

¶ 101 III. CONCLUSION

¶ 102 Because this appeal is the second time this court has addressed these issues in this case, in the interests of judicial economy, we remand with directions to appoint new counsel for defendant, so that the new counsel may take whatever action the new counsel deems appropriate regarding defendant's *pro se* claims of ineffective assistance of counsel.

¶ 103 For the reasons stated above, we reverse the trial court's judgment and remand with directions.

¶ 104 Reversed and remanded with directions.