2019 IL App (1st) 180376-U

No. 1-18-0376

Order filed December 4, 2019

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 8933 |
| | ) | |
| BROCHERS ISOM, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Ellis and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's conviction is affirmed where the trial court conducted a proper inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 2     Following a bench trial, defendant Brochers Isom was found guilty of attempt first degree murder, aggravated domestic battery, and domestic battery, and sentenced to concurrent prison terms of 18 years for attempt first degree murder and 7 years for aggravated domestic battery. On appeal, defendant contends the trial court conducted an improper hearing under *People v.*

*Krankel*, 102 Ill. 2d 181 (1984), by ruling on the merits of his *pro se* claim of ineffective assistance instead of deciding whether to appoint new counsel based on pretrial counsel's possible neglect. We affirm.

¶ 3    Defendant was charged by indictment with two counts of attempt first degree murder (720 ILCS 5/8-4(a) (West 2014); 720 ILCS 5/9-1(a)(1) (West 2014)), four counts of aggravated domestic battery (720 ILCS 5/12-3.3(a), (a-5) (West 2014)), and one count of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2014)), arising from an incident in Riverdale on May 2, 2015.

¶ 4    Defendant was arraigned on June 15, 2015, and pleaded not guilty through pretrial counsel. The parties agreed to continuances for discovery until October 21, 2015, when defendant sought a plea bargain. Between December 2, 2015, and March 24, 2016, the cause was continued for the State to consult the victim and for the defense to conduct an investigation. The cause was also continued by agreement in May and June 2016 for a pretrial investigation report. Defendant requested a pretrial conference on July 20, 2016, filed an answer to discovery on October 12, 2016, and requested a final pretrial hearing for November 29, 2016. That day, pretrial counsel sought a continuance for receipt of "materials subpoenaed from Cermak."

¶ 5    On December 29, 2016, a bench trial was scheduled for March 20, 2017. However, the parties agreed to conduct the trial in May because the prosecutor was involved in another case. On May 1, 2017, pretrial counsel and the State stated they were ready for the bench trial, but defendant requested a jury instead. Pretrial counsel was unavailable for the remainder of the week, so the case was continued for status on June 7, 2017, and set for trial on July 17, 2017.

¶ 6    On June 7, defendant addressed the court and demanded a "speedy jury trial." The court told defendant the decision was "up to" his attorney, and defendant asked to proceed *pro se*.

Following admonishments, the court acquiesced. Defendant later requested a bench trial, which occurred on August 22, 2017. The State proceeded on one count of attempt first degree murder, two counts of aggravated domestic battery, and one count of domestic battery.

¶ 7     Terri Young testified that on May 2, 2015, she and her boyfriend, defendant, were in his living room. Defendant demanded Young's cell phone, grabbed her hair, dragged her to the kitchen, and threw her into a garbage can. Defendant then dragged her back to the living room, climbed on top of her, hit her head and face, and said, "B***, Imma kill you." He choked her until she could not breathe and pressed his thumbs into her eyes, causing pain unlike anything she "ever felt before in [her] life."

¶ 8     When defendant got off Young, she felt one of her eyes "dangling." Young could not see, but crawled out the kitchen door and fell down the stairs. She shouted for help, and defendant said "nobody is going to hear you." Young crawled to a neighbor's porch, heard sirens, and next remembered waking in a hospital. The State published a photograph of Young in the hospital, with a patch on her left eye, cuts and bruises on her face, and bruises on her hands and arms. At the time of trial, Young could "hardly see" in her left eye.

¶ 9     Riverdale police officer Justin Humpich testified that he saw Young in a yard, slipping "in and out of consciousness" and screaming. Paramedic Monica Ciarlo testified that Young's left eye was protruding and her right eye was swollen shut. Young was not breathing, so the paramedics utilized a bag mask, sedated her, and took her to the hospital. Emergency room nurse James Cotts testified that Young was unintelligible and required surgery.

¶ 10     Defendant testified that Young moved into his house in January 2013, but he made her leave because she used cocaine. On May 2, 2015, Young and a man visited defendant's house to

retrieve her clothes. Young asked defendant for money to repay a debt she owed to the man, and when defendant refused, Young hit him with a frying pan. Defendant pushed her away, ran to a park, and did not return to his house that day. Defendant added that he proceeded *pro se* because "for 21 months I was trying to get my lawyer to demand trial," but "she wouldn't," and "was more trying to accommodate the [S]tate than *** defend me."

¶ 11    The trial court found defendant guilty on all counts.[1] Defendant filed a motion for new trial but declined to argue it, and instead, requested counsel. The court reappointed pretrial counsel, but stated it would conduct a *Krankel* inquiry because defendant's motion alleged, in relevant part, that he was "under duress" when pretrial counsel denied his "right to go to trial."

¶ 12    At the next hearing, the court asked defendant why he believed pretrial counsel was ineffective. Defendant stated that he asked pretrial counsel to "demand trial," but she "wouldn't do it on my behalf" and "was more like *** working with the State's Attorney than she was on my defense." The court asked defendant whether he "believe[d] that was ineffective on [pretrial counsel's] part, not to demand trial," and defendant answered affirmatively.

¶ 13    The court asked pretrial counsel to respond, and she stated the parties originally selected a date for bench trial. Both the State and counsel were "ready" that day, but they agreed to a continuance when defendant requested a jury. On the next date, defendant told pretrial counsel that he "wanted to demand trial." Before pretrial counsel responded, defendant asked the court to proceed *pro se*.

¶ 14    The court stated it "believe[d] that those are all matters of trial strategy," and "do not amount to ineffective assistance of counsel." According to the court, "[w]hether to demand trial

---

[1] The mittimus reflects that defendant was found guilty of the counts that the State nol-prossed before trial.

or not certainly falls under the umbrella of trial strategy. So I don't believe that was ineffective anyway, not at all." The court denied defendant's motion for new trial, and after a hearing, sentenced him to concurrent prison terms of 18 years for attempt first degree murder and 7 years for aggravated domestic battery.

¶ 15    On appeal, defendant contends the trial court conducted an improper *Krankel* hearing by ruling on the merits of his *pro se* ineffective assistance claim, rather than considering whether to appoint new counsel based on pretrial counsel's possible neglect. The State maintains defendant's contentions only implicated trial strategy and did not suggest neglect.

¶ 16    In *Krankel*, the supreme court provided the procedure the trial court should follow when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel. *People v. Jolly*, 2014 IL 117142, ¶ 29. The court must examine the factual basis for the claim, and if it lacks merit or pertains only to trial strategy, the court may deny the claim without appointing counsel. *Id.* However, if the allegations reveal possible neglect, new counsel should be appointed to investigate and represent defendant on his ineffective assistance claim. *People v. Moore*, 207 Ill. 2d 68, 78 (2003).

¶ 17    In considering the factual basis for the defendant's claim, the trial court may (1) ask counsel about the facts and circumstances of the defendant's allegations, (2) query the defendant, or (3) rely on its own knowledge of counsel's performance and "the insufficiency of the defendant's allegations on their face." *Id.* at 78-79. "During this evaluation, some interchange between the trial court and *** counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Id.* at 78. Thus, "[t]he purpose of the

preliminary *Krankel* hearing is to determine, in a neutral and nonadverserial proceeding, the factual basis for defendant's *pro se* claims of ineffective assistance and, if possible neglect by *** counsel has been demonstrated, to appoint new counsel for defendant to fully present the *** claim." *People v. Jackson*, 2016 IL App (1st) 133741, ¶ 77. We review *de novo* whether the court conducted an adequate preliminary inquiry into the factual basis for the ineffective assistance claim. *Jolly*, 2014 IL 117142, ¶ 28.

¶ 18    During defendant's *Krankel* hearing, the trial court queried defendant and pretrial counsel. Defendant alleged pretrial counsel was deficient for not honoring his request to demand trial, but pretrial counsel responded she was ready for a bench trial on May 1, 2017, when the cause was continued because defendant requested a jury. On June 7, 2017, defendant told pretrial counsel he "wanted to demand trial," and before she responded, defendant requested to proceed *pro se*. The court denied defendant's ineffective assistance claim, explaining that "[w]hether to demand trial" is a question of trial strategy," and pretrial counsel "was [not] ineffective anyway."

¶ 19    As the court noted, whether to demand trial is a strategic matter "left to the sound strategic decision of counsel." *People v. Kaczmarek*, 207 Ill. 2d 288, 298 (2003). Since at least December 29, 2016, pretrial counsel labored under the impression that defendant wanted a bench trial. Defendant only requested a jury on the date for the bench trial, May 1, 2017, and first told pretrial counsel to demand trial at the next hearing on June 7, 2017. Thus, even accepting defendant's assertion that pretrial counsel rejected his request to demand trial on that date—just five weeks after defendant requested a jury, and five weeks before the jury trial was scheduled to begin—her failure to honor defendant's request does not demonstrate possible neglect.

¶ 20    Moreover, we reject defendant's position that neglect was "apparent" because pretrial counsel did not challenge his "core allegations" about the lengthy delay preceding the May 1, 2017 trial date. The case was repeatedly continued, but the continuances related to discovery (June to October 2015), plea bargaining and investigation (December 2015 to March 2016), and a pretrial investigation report and conference (May to July 2016). The defense filed a response in October 2016, requested a continuance for subpoenaed materials in November 2016, and initially agreed to trial in March 2017, before consenting to a date in May because the prosecutor was involved in another case. These continuances were by agreement and were mostly requested by, or for the benefit of, the defense. As such, the record refutes the notion that pretrial counsel was neglectful regarding the delays.

¶ 21    Notwithstanding, defendant asserts the trial court's observation that pretrial counsel "was [not] ineffective" suggests the court "jumped straight to evaluating whether the allegations conclusively satisfied the standard for demonstrating ineffective assistance" under *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant cites *People v. Roddis*, 2018 IL App (4th) 170605, and *People v. Jackson*, 2016 IL App (1st) 133741, where the trial court erroneously rejected *pro se* claims of ineffective assistance without first conducting proper *Krankel* hearings. See *Roddis*, 2018 IL App (4th) 170605, ¶¶ 42, 88 (trial court addressed merits of ineffective assistance claim, but did not consider appointing new counsel based on possible neglect); *Jackson*, 2016 IL App (1st) 133741, ¶ 77 (trial court rejected ineffective assistance claim on merits without addressing "whether sufficient facts were alleged to show possible neglect and deciding whether to appoint conflict counsel").

¶ 22    Here, unlike in *Roddis* or *Jackson*, the trial court conducted a proper *Krankel* inquiry by ascertaining defendant's allegation of ineffective assistance and asking pretrial counsel to respond. Critically, the trial court could evaluate this information in light of the reasons for the agreed continuances in the case, which, as we have explained, demonstrated that defendant's claim was facially insufficient. *Moore*, 207 Ill. 2d at 79. Based on this record, the court's final comment that it did not believe pretrial counsel was ineffective does not evince error. See *People v. Dixon*, 382 Ill. App. 3d 233, 247 (2008) (viewing the *Krankel* inquiry as a whole, the trial court's observation that counsel met "the standards that we expect" did not prove it "required [defendant] to support his request for alternate counsel with something greater than a showing of possible neglect" (internal quotation marks omitted)). The trial court followed the correct *Krankel* procedure and found no possible neglect by pretrial counsel. That conclusion is supported by the record, and defendant's claim of error is therefore without merit.

¶ 23    For all the foregoing reasons, we affirm the judgment of the trial court.

¶ 24    Affirmed.